IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Claire Smith, ) | |
| ) | C/A No. 3:05-2352-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| Best Price Coins, Inc. and Dennis Helmer, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Plaintiff Claire Smith brings this action against Defendant Best Price Coins, Inc. and its principal, Defendant Dennis Helmer, alleging causes of action for rescission and violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 *et seq*. ("SCUTPA"). Service of the complaint was effected on August 25, 2005. Defendants failed to appear or otherwise defend; accordingly, at the request of Plaintiff, default was entered by the Clerk of Court on September 19, 2005.

The matter came before the court for a hearing in aid of default judgment on October 5, 2005. The court has considered Plaintiff's testimony given at the hearing; exhibits placed into evidence; the deposition of Peter A. Pigeon; and representations made by counsel at the hearing. The court concludes that Plaintiff is entitled to judgment in the amount of $454,500.00, representing three times the actual damages sustained by Plaintiff as the result of Defendants' willful and knowing violation of the SCUTPA.

I. FACTS

Plaintiff is 75 years old and a widow. She alleges that in early 2005 she received daily unsolicited telephone calls from an individual named Johnny Horton. Horton, who stated he was

associated with Best Price Coins, Inc., encouraged Plaintiff to purchase St. Gauden coins. Plaintiff already possessed gold bullion valued at approximately $120,412.40. Horton told Plaintiff that the gold bullion was in her possession illegally and that the government could confiscate it. Eventually Horton convinced Plaintiff to send Defendants her gold bullion plus funds in the amount of $54,587.60. In exchange for the $175,000 total value of the gold and currency, Plaintiff was to receive fifty St. Gauden coins purportedly valued at $3,500 apiece. Horton told Plaintiff that she would triple her investment because the coins would appreciate. The next day after Plaintiff agreed to the transaction, a courier was at her door to pick up the gold coins for shipping to Defendants.

Approximately one month later Plaintiff received seven of the fifty St. Gauden coins she had purchased. Plaintiff and others on her behalf made repeated demands on Horton and attempted to obtain satisfaction from Defendants' offices in Bloomington, Minnesota. Plaintiff's efforts were unavailing. Plaintiff met with counsel at the South Carolina Attorney General's office to report what had occurred. Plaintiff also filed a criminal complaint with the Bloomington, Minnesota police department. Plaintiff discovered that Defendants are the subjects of a criminal investigation in Minnesota because of similar business practices.

## II. DISCUSSION

First Cause of Action

Plaintiff first seeks to rescind the parties' oral agreement. The buyer may, in the event of fraud or default in performance by the seller, at his election stand on the contract and bring an action for damages, or avoid the contract and maintain an action for recovery of the price. "The remedy of rescission, when available, is as exact in its results as human arbitrament could possibly devise, the seller takes back his goods, and buyer his money." Ebner v. Haverty Furniture Co., 122 S.E.

578, 579 (S.C. 1924). Rescission is an "abrogation or undoing of [a contract] from the beginning, which seeks to create a situation the same as if no contract ever had existed." Boddie-Noell Properties, Inc. v. 42 Magnolia Partnership, 544 S.E.2d 279, 283 (S.C. Ct. App. 2001) (quoting Government Employees Ins. Co. v. Chavis, 176 S.E.2d 131, 135 (S.C. 1970)). A party rescinding for a breach has the right to recover back the money paid on the contract. 17A Am. Jur. Contracts § 604. Typically, the rescinding party must restore whatever he has received under the contract. Id. § 597. However, the general rule need not be enforced where restoration is impossible or unreasonable. Id. § 592.

At the hearing Plaintiff asked the court to award her the difference in value between what she received from Defendants (St. Gauden coins @ \$3,500 X 7 = \$24,500) and what she had bargained for (St. Gauden coins @ \$3,500 X 50 = \$175,000). The difference in value amounts to \$150,500 (\$175,000 - 24,500). In this case, it is unclear whether Plaintiff will be able to collect on any judgment entered against Defendants, given the ongoing criminal investigation. Forcing Plaintiff to restore the seven St. Gauden coins she received from Defendants would serve only to increase the amount of loss Plaintiff may suffer if Defendants ultimately do not compensate her. Equity compels the conclusion that Plaintiff be allowed to retain the seven St. Gauden coins she received from Defendants and that the value of the seven coins be offset against the entire sum paid by Plaintiff to Defendants for the purchase of fifty St. Gauden coins. The court concludes, therefore, that Plaintiff has been damaged in the net amount of \$150,500.00.

Second Cause of Action

Plaintiff also contends that Defendants have engaged in unfair and deceptive practices in violation of the SCUTPA. See S.C. Code Ann. § 39-5-20 (a) (declaring unlawful unfair or deceptive

acts or practices in the conduct of any trade or commerce). An unfair trade practice has been defined as a practice that is offensive to public policy or is immoral, unethical, or oppressive. A deceptive practice is one which has a tendency to deceive. Whether an act or practice is unfair or deceptive within the meaning of the SCUTPA depends upon the surrounding facts and the impact of the transaction on the marketplace. deBondt v. Carlton Motorcars, Inc., 536 S.E.2d 399, 407 (S.C. Ct. App. 2000) (citing cases).

In addition, the unfair acts or practices must adversely affect the public interest. An unfair or deceptive trade practice has an impact upon the public interest if it has the potential for repetition. Wilson Group, Inc. v. Quorum Health Resources, Inc., 880 F. Supp. 416, 426 (D.S.C. 1995). A plaintiff can demonstrate the potential for repetition by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence. Id.

Defendants' agent, Johnny Horton, used false representations regarding investment value and high-pressure sales tactics to induce Plaintiff to purchase the coins at issue. Plaintiff was promised fifty St. Gauden coins valued at $3,500 each; however, Plaintiff, despite repeated demands, received only seven of the fifty coins she paid for. There is some evidence in the record that the coins were overvalued. Neither Plaintiff nor anyone acting on her behalf was able to obtain a response from corporate headquarters regarding the undelivered coins. Moreover, the unrefuted testimony at the hearing was that Defendants made other similar fraudulent transactions in South Carolina and Minnesota. Based on this information, the court concludes that Defendants' actions constitute unfair and deceptive trade practices in violation of section 39-5-20(a). Further, Defendants' acts have occurred in the past to individuals other than Plaintiff and will continue to occur absent deterrence. Defendants have violated the SCUTPA.

The SCUTPA provides that "[a]ny person who suffers any ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive method, act or practice" may recover actual damages. In addition, a court shall award treble damages upon a finding of a willful violation of the Act. S.C. Code Ann. § 39-5-140. A willful violation occurs "if, in the exercise of due diligence, a person of ordinary prudence engaged in trade or commerce could have ascertained that his conduct violates the Act. . . ." State v. Nest Egg Society Today, Inc., 348 S.E.2d 381, 383 (S.C. Ct. App.1986).

Clearly, a person of ordinary prudence engaged in trade or commerce would know that the SCUTPA is violated by false representations regarding the investment value of a product, unconscionable sales tactics, and the failure to deliver a product after payment in full. The court concludes that Defendants' conduct was willful. Plaintiff suffered an ascertainable loss of $150,500.00 because of Defendants' knowing and willful use of unfair and deceptive methods, acts, or practices. Accordingly, the court awards treble damages in the amount of **$454,500.00**.

### III. CONCLUSION

For the reasons stated, Plaintiff is granted judgment by default in the amount of $454,500.00.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

October 24, 2005.